PEOPLE v CLEMONS

Docket No. 104806. Submitted March 7, 1989, at Lansing. Decided
    June 7, 1989.
    Keith C. Clemons was convicted of armed robbery following a
    jury trial in Detroit Recorder's Court, Michael J. Talbot, J., and
    sentenced to twenty to forty years in prison. Defendant ap-
    pealed.
        The Court of Appeals *held:*
        1. The trial court abused its discretion in allowing defendant
    to be impeached with evidence of his prior conviction for entry
    without the owner's permission. The entry offense does not
    contain elements of dishonesty, false statement, or theft and
    should have been excluded from the evidence.
        2. The trial court erred in allowing defendant to be im-
    peached with evidence of a charge against defendant which did
    not result in conviction.
        3. The verdict in this case is invalid because the jury was not
    properly impaneled and sworn in following a mistrial.
        Reversed and remanded for a new trial.

1. WITNESSES — IMPEACHMENT — RULES OF EVIDENCE.
    Evidence of a witness' prior conviction of an offense which does
    not contain elements of dishonesty, false statement, or theft is
    not admissible for purposes of impeaching the witness' veracity
    (MRE 609[a]).

2. WITNESSES — IMPEACHMENT — PRIOR ARRESTS OR CHARGES.
    In the examination or cross-examination of any witness, no
    inquiry may be made regarding prior arrests or charges against
    such witness which did not result in conviction; neither may
    such witness be examined with reference to higher original
    charges which have not resulted in conviction, whether by plea
    or trial.

REFERENCES
Am Jur 2d, Trial §§ 1080-1082; Witnesses §§ 569 *et seq.*, 587-590.
Right to impeach in criminal case by inquiry or evidence as to
    witness' criminal activity for which witness was arrested or
    charged, but not convicted—modern state cases. 28 ALR4th 505.

3. WITNESSES — IMPEACHMENT — NONEXISTENT CONVICTIONS.

   A trial court cannot exercise its discretion to permit impeachment by a conviction that does not exist.

4. TRIAL — MISTRIAL.

   The declaration of a mistrial renders nugatory all trial proceedings with the same result as if there had been no trial at all; the situation which exists is analogous to that which results from an appellate reversal and remand for a new trial.

5. TRIAL — MISTRIAL — JURORS' OATH.

   Once a mistrial is declared, any jurors from the first trial who are impaneled for a subsequent trial must again be administered the jurors' oath.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Brian D. Marzec,* Assistant Prosecuting Attorney, for the people.

*Rose Mary C. Robinson,* for defendant on appeal.

Before: SHEPHERD, P.J., and CYNAR and SAWYER, JJ.

PER CURIAM. Following a jury trial, defendant was convicted of armed robbery, MCL 750.529; MSA 28.797. Defendant was sentenced to twenty to forty years in prison and appeals as of right. We reverse.

On December 12, 1986, at about 10:30 P.M., the fourteen-year-old complainant was waiting for a bus at the corner of Seven Mile Road and Greenfield Road, in Detroit, Michigan. Complainant saw two men standing nearby. One of the men, whom complainant later identified as defendant, walked up to complainant and grabbed him by his collar. Defendant stated "give it up." Defendant had his other hand in his coat pocket and it looked like he

was holding a gun. The other man hit complainant on the head with a gun. Complainant was not coherent after he was hit. The men took complainant's gray sheepskin coat, hat, gloves, and $30 and ran away. Complainant flagged down a police car and told the police officers that he had just been robbed.

At the time of the robbery, defendant was wearing a beige sheepskin jacket, a hat, and Lotto gym shoes. After the police officers picked up complainant, they drove him around the neighborhood of the robbery. While they were driving around, complainant saw defendant and recognized his coat, hat, and gym shoes. The police officers stopped the car and arrested defendant. Defendant did not have a weapon and was not in possession of any of the articles stolen from complainant. Defendant was then placed in the same police car with complainant for several minutes.

Complainant was then taken to the hospital. Complainant had a cut and swelling around his right eye and suffered some dizziness. He also suffered short-term memory loss and his memory was not fully restored for several days. One of the police officers, Ralph Hunsaker, noticed complainant's memory loss. Officer Hunsaker testified that complainant was sketchy about his own identification, such as his address and phone number, and could not remember what he initially told the police officers. Complainant identified defendant as one of his assailants at a subsequent lineup and at trial.

At trial, defendant denied robbing complainant. He also denied being at the scene of the robbery on the evening of December 12, 1986. Defendant testified that he was going to visit a friend at the time he was arrested. On cross-examination, the

prosecutor impeached defendant with evidence of his prior convictions.

On appeal, defendant first argues that the impeachment with evidence of his prior convictions was improper and denied him a fair trial.

In *People v Allen,* 429 Mich 558; 420 NW2d 499 (1988), the Supreme Court resolved the different interpretations of the application of MRE 609(a) to the practice of impeaching criminal defendants with evidence of prior convictions. In *Allen,* the Court set forth a more specific procedure for the exercise of discretion under the then-present MRE 609(a). In addition, the Court promulgated an amendment to MRE 609(a) to apply to all cases tried after March 1, 1988. The *Allen* Court further declared that its clarified balancing test is to be applied retroactively to all cases pending on initial and direct appeal in which the issue of impeachment by prior conviction under the then-existing MRE 609(a) has been raised and preserved. *Allen, supra,* p 609. Since the instant appeal is such a case, we must review the trial court's decision to admit evidence of defendant's prior convictions under the clarified balancing test set forth in *Allen.*

In explaining the balancing test, the Supreme Court stated:

> In sum, the trial judge's first task, under the amended MRE 609, will be to determine whether the crime contains elements of dishonesty or false statement. If so, it would be admitted without further consideration. If not, then the judge must determine whether the crime contains an element of theft. If it is not a theft crime, then it is to be excluded from evidence without further consideration. If it is a theft crime and it is punishable by more than one year's imprisonment, the trial judge would exercise his discretion in determining

the admissibility of the evidence by examining the degree of probativeness and prejudice inherent in the admission of the prior conviction. For purposes of the probativeness side of the equation, only an objective analysis of the degree to which the crime is indicative of veracity and the vintage of the conviction would be considered, not either party's need for the evidence. For purposes of the prejudice factor, only the similarity to the charged offense and the importance of the defendant's testimony to the decisional process would be considered. The prejudice factor would, of course, escalate with increased similarity and increased importance of the testimony to the decisional process. Finally, unless the probativeness outweighs the prejudice, the prior conviction would be inadmissible. [429 Mich 605-606.]

Defendant contends that the trial court abused its discretion in allowing him to be impeached with evidence of his prior conviction for entry without the owner's permission, MCL 750.115; MSA 28.310. We agree. Under the *Allen* balancing test, this prior offense does not contain elements of dishonesty, false statement, or theft and should have been excluded from the evidence. Furthermore, we find that this improper impeachment was not harmless since the prosecutor's case against defendant was not overwhelming and a reasonable juror could have voted to acquit defendant if he had not been impeached. *Allen, supra,* p 612.

Defendant further contends that he was improperly impeached with evidence of a prior conviction for a crime that he did not commit.

In the examination or cross-examination of any witness, no inquiry may be made regarding prior arrests or charges against such witness which did not result in conviction. Neither may such witness be examined with reference to higher original

charges which have not resulted in conviction, whether by plea or trial. *People v Falkner,* 389 Mich 682, 695; 209 NW2d 193 (1973). A trial court cannot exercise its discretion to permit impeachment by a conviction that does not exist. *People v West,* 408 Mich 332, 341; 291 NW2d 48 (1980).

In this case, defendant was impeached by the prosecutor on cross-examination with evidence that he was previously convicted of two counts of attempted receiving and concealing of stolen property over the value of $100. However, the record reveals that defendant was only previously convicted of one count of attempted receiving and concealing of stolen property.

We find that the impeachment of defendant with a second count of attempted receiving and concealing of stolen property, which did not result in conviction, was error. Moreover, we do not believe that such error was harmless in this case. *Allen, supra.* Defendant's testimony was of significant importance in this case and impeachment with an additional count of the prior offense may have caused the jury to further doubt defendant's testimony.

Defendant also argues that the verdict in this case was invalid because the jury was not properly impaneled and sworn in. We agree.

In *People v Pribble,* 72 Mich App 219, 224; 249 NW2d 363 (1976), this Court, in discussing the oath that must be administered to jurors, stated:

> The required oath is not a mere "formality" which is required only by tradition. The oath represents a solemn promise on the part of each juror to do his duty according to the dictates of the law to see that justice is done. This duty is not just a final duty to render a verdict in accordance with the law, but the duty to act in accordance with the law at all stages of trial. The oath is administered

to insure that the jurors pay attention to the
evidence, observe the credibility and demeanor of
the witnesses and conduct themselves at all times
as befits one holding such an important position.
The oath is designed to protect the fundamental
right of trial by an impartial jury.

In this case, after the trial court originally
administered the oath to the jurors, a juror in-
formed the court that he knew complainant's fa-
ther and could not be impartial. The trial judge
excused the juror and gave defendant the option of
continuing with eleven jurors. Defendant rejected
that option and demanded a jury of twelve. Out-
side the presence of the jury, the trial court de-
clared a mistrial. The court later informed the
jury that a mistrial had been declared. Instead of
selecting twelve new potential jurors, the trial
judge decided to bring the remaining original ju-
rors back. Subsequently, another juror was ex-
cused by the trial court. Thereafter, two additional
jurors were selected and the oath was adminis-
tered only to the two new jurors. The remaining
ten jurors were not given the oath again after the
mistrial.

The declaration of a mistrial renders nugatory
all trial proceedings with the same result as if
there had been no trial at all. *People v Hamm,* 100
Mich App 429, 435; 298 NW2d 896 (1980), lv den
411 Mich 888 (1981). The situation which exists is
analogous to that which results from an appellate
reversal and remand for a new trial. *Id.*

In the instant case, the declaration of a mistrial
rendered all prior trial proceedings invalid as if
there had been no trial at all. Therefore, the
remaining ten jurors from the first trial should
have been given the oath again when they were
impaneled as jurors for the second trial. The re-
quired oath is necessary to protect the defendant's

fundamental right of trial by an impartial jury. *Pribble, supra.*

Based upon our review of the record, we find that none of defendant's remaining issues require reversal. In light of our resolution of this case, we will not fully address them.

Reversed and remanded for a new trial. We do not retain jurisdiction.